ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| EDWIN MOJICA RODRÍGUEZ<br><br>Peticionario<br><br>v.<br><br>MARI CARMEN REYES FAJARDO<br><br>Recurrida | KLCE202400634 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Sobre:<br>Divorcio<br><br>Caso Número:<br>FDI2012-0967 |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de julio de 2024.

Comparece Edwin Mojica Rodríguez ("Peticionario" o "señor Mojica Rodríguez") mediante *Certiorari Civil* y solicita la revisión de tres órdenes emitidas por el Tribunal de Primera, Sala Superior de Carolina ("TPI"). Mediante las órdenes emitidas el 15 de marzo de 2024 y notificadas el 1 de abril de 2024, el TPI declaró *No Ha Lugar* la solicitud de relevo de pensión alimentaria presentada por el señor Mojica Rodríguez, con relación a su hijo mayor de edad, Pablo Mojica Reyes ("Recurrido" o "joven Mojica Reyes"). Por otro lado, mediante *Orden* emitida el 30 de abril de 2024 y notificada el 7 de mayo de 2024, el TPI declaró *No Ha Lugar* la solicitud de descalificación de la Lcda. Annelise Rivera Rivero y la Lcda. Annette Rivero Marín.

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari* solicitado y se *Confirman* los dictámenes recurridos.

**I.**

El 9 de junio de 2023, el señor Mojica Rodríguez presentó ante el TPI una *Moción Asumiendo Representación Legal y en Solicitud de Relevo del Pago de Pensión Alimentaria.* En síntesis, el Peticionario adujo que, en el caso de epígrafe existía una pensión alimentaria por la suma de $1,145.47 a favor del joven Mojica Reyes, quien al momento de

estipularse la pensión era menor de edad. Asimismo, sostuvo que, el 4 de abril de 2023, el joven Mojica Reyes advino a la mayoría de edad. Por todo lo cual, solicitó que se le relevara del pago de la pensión alimentaria.

El 8 de agosto de 2023, el joven Mojica Reyes presentó por conducto de la Lcda. Rivera Rivero una *Moción Asumiendo Representación Legal y en Oposición de Solicitud de Relevo de Pensión Alimentaria y en Solicitud de Hogar Seguro*. En esta, el Recurrido se opuso al relevo de pensión alimentaria ya que, alegó que, se encontraba cursando estudios universitarios en la Universidad Politécnica de Puerto Rico y que poseía un buen aprovechamiento académico. Asimismo, sostuvo que, trabajaba a tiempo parcial en el negocio de su familia, Gabinetes Rodríguez, y que tenía un ingreso neto promedio de $500.00 mensuales. Por otro lado, solicitó que la residencia, propiedad del señor Mojica Rodríguez, en la cual reside junto a su madre y hermana fuera declarada como su hogar seguro.

Luego de varios trámites procesales, el 23 de octubre de 2023, se celebró una Vista en Desacato a la cual compareció el señor Mojica Rodríguez y el joven Mojica Reyes, no así la madre del joven, Mari Carmen Reyes Fajardo ("señora Reyes Fajardo"). Conforme surge de la *Minuta Resolución*, las partes estipularon la transcripción de créditos del joven Mojica Reyes, la cual contemplaba los periodos de otoño 2021 hasta primavera 2023. Asimismo, el joven Mojica Reyes declaró que, por el momento, no se encontraba trabajando. Además, indicó que, según su Consejera, estimaba que le quedaban cuatro (4) años de estudio para completar su bachillerato. Señaló que, no era estudiante a tiempo completo. Por su parte, el señor Mojica Rodríguez sostuvo que el joven Mojica Reyes no tenía un buen aprovechamiento académico.

Luego de aquilatada la prueba documental y testifical, el TPI declaró *No Ha Lugar* el relevo de pensión alimentaria, por entender que el joven se encontraba estudiando y que tenía un aprovechamiento académico razonable. Además, el Tribunal instó al joven a acercarse a un promedio mínimo de 2.50, al igual que estudiar a tiempo completo,

entiéndase doce (12) créditos o más. De igual manera, le indicó al señor Mojica Rodríguez que, del joven incumplir con tal requisito, volviera a presentar la solicitud sobre relevo de pensión alimentaria. Por otra parte, el foro primario también declaró *No Ha Lugar* la solicitud de hogar seguro presentada por el Recurrido.

El 13 de diciembre de 2023, el señor Mojica Rodríguez presentó una *Urgente Solicitud de Relevo de Pensión Alimentaria*. El Peticionario adujo que advino en conocimiento de que el joven culminó el trimestre de otoño 2023 con un promedio de 1.20, contrario a lo ordenado por el TPI. Como parte de la solicitud, el señor Mojica Rodríguez anejó las notas del joven para el semestre correspondiente. Así las cosas, por entender que su hijo no tenía aprovechamiento académico y porque no había demostrado ser merecedor de la pensión alimentaria, el señor Mojica Rodríguez solicitó, nuevamente, el relevo de la pensión alimentaria.

Posteriormente, el 9 de febrero de 2024, el joven Mojica Reyes presentó su oposición al relevo de pensión alimentaria. En resumidas cuentas, el Recurrido adujo que las notas informadas por su padre fueron causadas por la ansiedad y tristeza que había estado atravesando como consecuencia del proceso legal. Además, sostuvo que, en ese mismo mes, tenía pautada una cita con su Consejera para cambiarse de la concentración de Ingeniería de Computadoras a Ingeniería Eléctrica.

El 6 de marzo de 2024, el señor Mojica Rodríguez presentó una *Moción Reiterando Relevo de Pensión Alimentaria*. El Peticionario adujo que, mediante la oposición, el joven Mojica Reyes no controvirtió la evidencia presentada, a los efectos de probar que tenía un buen aprovechamiento académico. Además, afirmó que, en el trimestre de invierno 2023, el joven dio de baja de la clase de Ingeniería Económica, obtuvo la calificación de "D" en Introducción a la Física y obtuvo "C" en Español de Negocios, obteniendo así un promedio académico de 2.50 durante el trimestre.

El TPI emitió una *Orden* el 15 de marzo de 2024, notificada el 1 de abril de 2024, mediante la cual declaró *No Ha Lugar* la solicitud de relevo de pensión alimentaria. Además, le otorgó tres (3) días perentorios al señor Mojica Rodríguez para contestar el descubrimiento de prueba. Ese mismo día, el foro primario notificó una segunda *Orden* dictaminada el 15 de marzo de 2024, mediante la cual declaró *No Ha Lugar* la *Moción Reiterando Relevo de Pensión Alimentaria.*

Inconforme, el 16 de abril de 2024, el Peticionario presentó una *Moción de Reconsideración.* En esa misma fecha, el señor Mojica Rodríguez presentó una *Moción de Descalificación de las Licenciadas Rivero Marín y Rivera Rivero.* El señor Mojica Rodríguez señaló que la Lcda. Rivero Marín había representado al joven en el pleito de alimentos cuando este era menor de edad. A tales efectos, alegó que la Lcda. Rivero Marín no podía actuar en el pleito de epígrafe como abogada de la señora Reyes Fajardo, debido a que constituía un conflicto de intereses e incurría en una representación sucesiva adversa.

Por otra parte, el señor Mojica Rodríguez adujo que debido a que la Lcda. Rivero Marín y la Lcda. Rivera Rivero compartían una misma oficina, existía una representación simultánea adversa. Sostuvo que, en una moción presentada el 7 de febrero de 2024 por la señora Reyes Fajardo, se hizo alusión a hechos que supuestamente ya habían sido presentados por el joven Mojica Reyes. No obstante, sostuvo que los referidos hechos no fueron presentados por el joven Mojica Reyes ante el TPI hasta el 9 de febrero de 2024. El Peticionario, alegó que, tal situación sugería que la Lcda. Rivero Marín tenía acceso a información compartida por el joven en la oficina de la Lcda. Rivera Rivero, colocándolo en clara desventaja. Por todo lo cual, arguyó que la Lda. Rivero Marín y la Lcda. Rivera Rivero se encontraban en violación al Canon 21 y Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX.

El 19 de abril de 2024, la señora Reyes Fajardo, por conducto de la Lcda. Rivero Marín, presentó una *Moción en Oposición a Moción de*

*Descalificación.* La señora Reyes Fajardo adujo que, en el 2015, la Lcda. Rivero Marín, únicamente asumió su representación legal, no la del hijo de las partes, ya que este no era parte demandada y sus intereses fueron representados por su madre. En cambio, sobre la alegación de acceso a información, la madre alimentista adujo que vive junto a su hijo y hablan entre sí, tal como lo hace el padre con el joven.

El 22 de abril de 2024, el señor Mojica Rodríguez presentó una *Réplica a Moción en Oposición a Moción de Descalificación* en la cual reiteró los mismos argumentos esbozados en la solicitud de descalificación.

El TPI emitió una *Orden* el 29 de abril de 2024, notificada el 7 de mayo de 2024, mediante la cual denegó la solicitud de reconsideración. Finalmente, el 30 de abril de 2024 el foro primario emitió otra *Orden,* notificada el 7 de mayo de 2024, y declaró *No Ha Lugar* la solicitud de descalificación instada por el señor Mojica Rodríguez.

Insatisfecho, el 7 de junio de 2024, el señor Mojica Rodríguez acudió ante esta Curia mediante *Certiorari Civil* y solicitó la revisión de las órdenes notificadas el 1 de abril de 2024 y la *Orden* emitida el 30 de abril de 2024 y notificada el 7 de mayo de 2024. El Peticionario señaló los siguientes errores:

> **Erró el Honorable Tribunal de Primera Instancia en declarar No Ha Lugar la solicitud de descalificación de la Lcda. Annette Rivero Marín por conflicto de intereses para representación sucesiva de partes que son adversas, a pesar de que en la actualidad es la abogada de la señora Mari Carmen Reyes en la reclamación del joven Pablo Mojica Reyes de alimentos entre parientes y defendió los intereses de este en el caso de alimentos cuando era menor de edad.**

> **Erró el Honorable Tribunal de Primera Instancia en declarar No Ha Lugar la solicitud de relevo de pensión alimentaria[,] a pesar de que se ha demostrado que el joven no cumple con el requisito de aprovechamiento académico para ser merecedor de la pensión alimentaria.**

El 21 de junio de 2024, la señora Reyes Fajardo presentó su alegato en oposición. Transcurrido el término dispuesto en la Regla 37 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 37, sin la comparecencia del joven Mojica Reyes, queda perfeccionado el recurso y procedemos a resolver.

## II.

### -A-

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC*, 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR*, 185 DPR 307, 337-338 (2012).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, delimita expresamente las instancias en las que este Tribunal de Apelaciones puede expedir los recursos de *certiorari* para revisar resoluciones y órdenes interlocutorias del foro de Instancia. *800 Ponce de León Corp. v. American International Insurance, supra*; *Scotiabank de Puerto Rico v. ZAF Corporation*, 202 DPR 478, 487 (2019). En lo pertinente, la referida regla dispone lo siguiente:

> [e]l recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari, en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. 32 LPRA Ap. V, R. 52.1.

Aun cuando al amparo del precitado estatuto adquirimos jurisdicción sobre un recurso de *certiorari*, la expedición del auto y la adjudicación en

sus méritos es un asunto discrecional. No obstante, tal discreción no opera en el abstracto. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari*, a saber:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para analizar el problema.
C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B.

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. V. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Umpierre Matos v. Juelle Albello*, 203 DPR 254, 275 (2019); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**-B-**

Entre los deberes principales de la patria potestad se encuentra el deber de proveer alimentos a los hijos. Esta obligación de los padres y el derecho de los hijos menores de edad a reclamar sus alimentos es parte esencial del derecho constitucional a la vida. Este deber y derecho constitucional, que a su vez está revestido del más alto interés público, que no es otro que el mejor bienestar del menor, 653 al 680 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 7531 a la 7582 y en la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como la Ley Orgánica de la Administración para el Sustento de Menores, 8 L.P.R.A. sec. 501 *et. seq.*, [en adelante, "Ley para el Sustento de Menores"]. Véase, *Maldonado v. Cruz,* 161 D.P.R. 1, 12-13 (2004); *Martínez v. Rodríguez,* 160 D.P.R. 145, 145 (2003); *Ríos Rosario v. Vidal Ramos*, 134 D.P.R. 3, 7 (1993).

Se entiende por alimentos todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia. Los alimentos comprenden también la educación e instrucción del alimentista, cuando es menor de edad. Artículo 653 del Código Civil, 31 L.P.R.A. sec. 7531.

A su vez, la obligación de brindar alimentos a los menores de edad surge de la relación paterno-filial que se origina en el momento en que la paternidad o maternidad quedan establecidas. *McConnell v. Palau,* 161 DPR 734, (2004). Cónsono con lo anterior, la obligación de proveer alimentos recae sobre ambos progenitores, como parte de la patria potestad y custodia. Artículo 590 del Código Civil, 31 L.P.R.A. 7242.

La obligación de proveer alimentos deberá regirse por el principio de proporcionalidad. Es decir, la cuantía de los alimentos será proporcional a los recursos del que los brinda y a las necesidades del que los recibe, y se reducirán o aumentarán en proporción a los recursos del primero y a las necesidades del segundo. Artículo 665 del Código Civil, 31 LPRA 7561. En *Llorens Becerra v. Mora Monteserín,* 178 DPR 1003 (2010), se enfatizó que la determinación de la cuantía de alimentos corresponde

al prudente arbitrio del juzgador, quien debe velar por que la cuantía que se establezca cumpla con el principio de proporcionalidad.

Por otra parte, el Artículo 679 del Código Civil, 31 LPRA 7581, enumera las causas para que la obligación de alimentar termine. Este artículo dispone que cesará la obligación de dar alimentos:

(a) por la muerte del alimentista o del alimentante;
(b) cuando el patrimonio del alimentante se reduce hasta el extremo de no poder satisfacerlos sin desatender sus propias necesidades y las de su familia inmediata; salvo cuando el alimentista sea menor de edad, que será de aplicación las normas de la legislación especial complementaria;
(c) cuando el alimentista puede ejercer un oficio, profesión o industria, o ha mejorado su situación económica;
(d) cuando el alimentista, sea legitimario o no, comete alguna falta de las que dan lugar a la desheredación; o
(e) cuando la necesidad del alimentista proviene de su mala conducta o de la falta de aplicación al trabajo, mientras subsista esta causa.

En cuanto al aspecto de educación e instrucción, el Tribunal Supremo ha reconocido que, si un hijo "se ha iniciado en un oficio o carrera durante la minoridad, tiene derecho a exigir que el alimentante le provea los medios para terminarlo, aun después de haber llegado a la mayoridad". *Key Nieves v. Oyola Nieves*, 116 DPR 261, 265-266 (1985); *Guadalupe Viera v. Morell*, 115 DPR 4, 14 (1983). Es una norma establecida que un tribunal puede ordenar el pago de alimentos a un hijo mayor de edad que haya iniciado sus estudios universitarios durante su minoridad y demuestre que tiene necesidad de ayuda. *Guadalupe Viera v. Morell, supra*, a la pág. 14.

Por último, sobre la situación que presentan los estudios postgrados, como el estudio de las profesiones que requieren un exceso de los cuatro años de bachillerato, estos casos ameritan "una consideración especial y separada que, como regla general, tendrá que ser resuelta de acuerdo a los hechos particulares de cada caso". *Key Nieves v. Oyola Nieves, supra*, a la pág. 267. Ante tal situación, "el hijo que solicite 'alimentos' o asistencia económica para estudios 'postgraduados' **deberá demostrar afirmativamente que es acreedor de tal asistencia económica mediante la actitud demostrada por los**

**esfuerzos realizados, la aptitud manifestada para los estudios que desea proseguir a base de los resultados académicos obtenidos, y la razonabilidad del objetivo deseado**". (Énfasis nuestro). *Rodríguez Amadeo v. Santiago Torres*, 133 DPR 785, 794 (1993) citando a *Key Nieves v. Oyola Nieves*, *supra*, a la pág. 267.

### -C-

El Tribunal de Primera Instancia tiene autoridad para ordenar la descalificación de un abogado. *K–Mart Corp. v. Walgreens*, 121 D.P.R. 633, 638 (1988). Procede la descalificación cuando el abogado "incurr[e] en conducta que constituya un obstáculo para la sana administración de la justicia o infrinja sus deberes hacia el tribunal, sus representados(as) o sus compañeros(as) abogados(as)". Regla 9.3 de las de Procedimiento Civil de 2009, 32 LPRA Ap. V R.9.3.

"Una orden de descalificación puede proceder, ya sea para prevenir una violación a cualquiera de los cánones del Código de Ética Profesional o para evitar actos disruptivos de los abogados durante el trámite de un pleito." *Job Connection Center v. Sups. Econo*, 185 DPR 585, 596 (2012); *Meléndez Vega v. Caribbean Intl. News*, 151 DPR 649, 661-662 (2000).

Cuando es una parte quien solicita la descalificación de un abogado, el TPI debe "hacer un análisis de la totalidad de las circunstancias", considerando los siguientes factores: (i) si quien solicita la descalificación tiene legitimación activa para invocarla; (ii) la gravedad de la posible violación ética involucrada; (iii) la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados implicados; (iv) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (v) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos. *Job Connection Center*, 185 DPR a las págs. 597-598; *Liquilux Gas Corp v. Berríos, Zaragoza*, 138 DPR 850, 864 (1995).

Aunque no constituye un procedimiento disciplinario, una descalificación afecta los derechos de las partes y el trámite del procedimiento. **En consideración a ello, la descalificación es un remedio que no se debe imponer ligeramente. Sólo procede cuando sea estrictamente necesario**. (Énfasis suplido). Si existen medidas menos onerosas que aseguren la integridad del proceso judicial y el trato justo a las partes, la descalificación debe ser denegada. El Tribunal debe realizar un balance entre el efecto adverso de la representación y el derecho a un juicio justo e imparcial. *Job Connection Center*, 185 DPR a las págs. 599-602.

Por otro lado, la norma es un abogado no debe participar en un litigio cuando será llamado a declarar sobre los hechos. *In Re Cardona Álvarez*, 133 DPR 588, 593 (1993); *In Re Colón Ramery*, 133 DPR 555, 568 (1993). Sin embargo, se ha reconocido a los litigantes "la libertad de selección" y el derecho a comparecer representados por el abogado o abogada de su preferencia. *Sánchez Acevedo v. ELA*, 125 DPR 432, 438 (1990).

En el contexto de la litigación civil, una parte sólo puede solicitar el descubrimiento del testimonio de un abogado luego de que ha establecido que la información interesada no puede ser obtenida por medio de otros testigos y de haber agotado otras alternativas para tener acceso a ella. *Ades v. Zalman*, 115 DPR 514, 524 (1984). No se favorece, de este modo, que el representante de una parte sea libremente llamado a declarar por la parte contraria, de forma indiscriminada. Si ello se permitiera, podría afectarse la capacidad del abogado para ofrecer una representación efectiva a su cliente. *Alvear Maldonado v. Ernst & Young LLP*, 191 DPR 921 (2014); *Ades*, 115 DPR a la pág. 524.

En *Ades v. Zalman, supra,* se estableció que no existe un derecho absoluto a llamar a deponer al representante legal de la parte contraria en un litigio. Se consignó que "la prerrogativa de llamar a deponer a un abogado del litigante contrario, para que declare sobre aspectos del caso

(…), puede convertirse en un medio mortificante, abusivo y opresivo no sólo hacia ese abogado, sino hacia su representado." *Íd.*, a la pág. 523. El derecho de hacerlo, así pues, está condicionado a que "previa y adecuadamente", se establezca una justa causa. Esa determinación exige un estricto y ponderado escrutinio de los tribunales. El foro sentenciador escudriñará en cada caso si la información que se busca descubrir es susceptible de ser obtenida de otras personas. De existir otras fuentes accesibles y aptas de información, debe prescindirse de ese curso de acción. *Íd.*, a la pág. 524.

La determinación de derecho del TPI, de descalificar a un(a) abogado(a), es una decisión impregnada de un alto grado de discreción que tiene dicho foro en el manejo procesal de un caso. *Meléndez Vega*, 151 DPR a la pág. 664; *Lluch v. España Service Sta.*, 117 DPR 729 (1986); *Valencia, Ex parte*, 116 DPR 909 (1986). En tal sentido, se revoca esta determinación si se demuestra que hubo un craso abuso de discreción, que el TPI actuó con prejuicio o parcialidad, que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, o que la intervención en esa etapa evitará un perjuicio sustancial. *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170 (1992); *Lluch, supra.*

**-D-**

El Canon 21 del Código de Ética Profesional, dispone, en lo pertinente, lo siguiente:

> El abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.

> No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.

> La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueban. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste [...]. 4 LPRA Ap. IX; *In re Rafucci Caro*, 206 DPR 589, 608 (2021).

El citado canon impone a los miembros de la profesión legal el deber de lealtad y fidelidad con su cliente al evitar incurrir en la representación de intereses encontrados. *In re Rafucci Caro, supra*; *In re Ortiz Rivera*, 195 DPR 122, 132–133 (2016). Al amparo del referido canon, es norma reiterada, que los miembros de la profesión legal deben evitar los siguientes escenarios que reflejan conflicto de intereses: (a) aceptar la representación de un cliente sobre asuntos que pueden afectar adversamente los intereses de un cliente anterior, situación conocida como representación sucesiva adversa; (b) aceptar la representación simultánea de dos (2) clientes con intereses encontrados, situación conocida como representación simultánea de clientes, y (c) aceptar la representación legal conociendo que su juicio profesional puede verse afectado por sus intereses personales. *In re Rafucci Caro, supra*, a la pág. 609. En lo que respecta a la instancia de representación simultánea adversa, por medio de su proscripción se pretende evitar que un abogado en beneficio de un cliente "abogue por aquello a lo que debe oponerse en cumplimiento de sus obligaciones actuales con otro cliente, puesto que, abogaría así por causas contrarias." *In re Pietri Torres*, 201 DPR 583, 595 (2018).

La referida prohibición "se extiende no solo a la existencia real del conflicto, sino a conflictos aparentes pero que llevan consigo la semilla de un posible o potencial conflicto." *In re Aponte Duchesne*, 191 DPR 247, 257 (2014). Huelga resaltar, que independientemente que un cliente consienta o no a una representación simultánea antagónica, un abogado, no puede asumir ese tipo de representaciones, debido a que, de la misma

surge una relación sustancial que implica intereses adversos. *Otaño v. Vélez,* 141 DPR 820, 826 (1996). Cónsono con ello, para que un abogado renuncie a la representación simultánea adversa, el cliente no tiene que probar que existió una violación al factor de confidencialidad, ya que para que proceda tal renuncia solo es suficiente que pruebe: (a) la existencia de una relación previa de abogado y cliente; (b) la relación sustancial vigente entre ambas representaciones conflictivas; y (c) el efecto adverso que surge de la representación dual de ellas. *Íd,* a la pág. 827. Ahora bien, es importante destacar "que nada existe en el referido canon 21 que vede la representación sucesiva o simultánea de dos clientes por su abogado ante la total ausencia de un posible conflicto de intereses entre ambas representaciones". *Íd.*

En lo que concierne a este caso, el Canon 38 de Ética Profesional dispone la preservación del honor y la dignidad de la profesión, al establecer que los abogados deben esforzarse al máximo en la exaltación del honor y dignidad, aunque ello conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. 4 LPRA Ap. IX, C. 38. En virtud de tal disposición, el profesional del derecho tiene el deber de lucir puro y libre de influencias extrañas a su gestión profesional y, en el descargo de sus responsabilidades, debe cuidarse de que sus actuaciones no den margen a la más leve sospecha de que promueve intereses conflictivos. *In re: Toro Cubergé,* 140 DPR 523, 532 (1996).

"*La apariencia de conducta impropia puede resultar muy perniciosa al respeto de la ciudadanía por sus instituciones de justicia y por la confianza que los clientes depositan en sus abogados*". *In re: Sepúlveda Girón,* 155 DPR 345, 361 (2001). Es por ello que, las dudas sobre asuntos de ética profesional debe resolverlas el abogado con rigurosidad contra sí mismo. *In re: Valentín González,* 115 DPR 68, 73 (1984). Más aún, la jurisprudencia reiteradamente ha establecido que la apariencia de impropiedad será utilizada para resolver cualquier duda que surja sobre la posible representación legal de un abogado en un caso, en favor de la

descalificación. *Otaño v. Vélez, supra*, a la pág. 828; *Liquilux Gas Corp. v. Berríos, Zaragoza, supra*, a la pág. 864.

**III.**

En síntesis, el señor Mojica Rodríguez solicita la revisión de los dictámenes mediante los cuales el TPI denegó su solicitud de relevo de pensión alimentaria y la descalificación de las representantes legales de la parte recurrida, respectivamente. El Peticionario arguye que el foro recurrido debió relevarlo del pago de la pensión alimentaria, toda vez que el joven Mojica Reyes advino a la mayoría de edad y no ha demostrado tener aprovechamiento académico durante sus estudios de bachillerato.

Por otra parte, arguye que procede la descalificación de la Lcda. Rivero Marín ante una posible violación al Canon 21, *supra*. Particularmente, sostiene que la Lcda. Rivero Rivera representó al joven Mojica Reyes, por conducto de su madre, la señora Reyes Fajardo, en el pleito de alimentos cuando este era menor de edad. Así las cosas, afirma que, en el caso de autos, la representación de la Lcda. Rivero Marín, como abogada de una parte cuyos intereses resultan adversos a los del joven, constituye una representación sucesiva adversa.

La solicitud de descalificación es un remedio drástico, por lo cual solo procede al no existir medidas menos onerosas. Sabido es que, surge un conflicto de interés por representación sucesiva adversa cuando el abogado acepta la representación de un cliente sobre asuntos que pueden afectar adversamente los intereses de un cliente anterior. El criterio rector para determinar si estamos ante tal conflicto es el principio de relación sustancial. En otras palabras, solo se tendría que demostrar que la controversia legal presente está sustancialmente relacionada a la causa de acción en la que la abogada previamente participó.

Asimismo, conforme hemos discutido, es deber del promovente de una solicitud de descalificación demostrar que la representación en controversia le causó un daño, perjuicio o ventaja indebida en el caso. En otras palabras, es la parte afectada por la representación sucesiva

adversa quien tiene legitimación para solicitar la descalificación cuando la prohibición sobre el conflicto de intereses surge en el contexto de una relación abogado-cliente. Canon 21 del Código de Ética Profesional, *supra*, *In re Rafucci Caro, supra*; *In re Ortiz Martínez*, 161 DPR 572, 580–581 (2004), *In re Aponte Duchesne, supra*; *In re Pérez Marrero*, 185 DPR 449, 457 (2012). Por tanto, al señor Mojica Rodríguez no haber logrado demostrar que la representación le ocasionó un daño, perjuicio o ventaja indebida en el caso, la descalificación de la Lcda. Rivero Rivera resulta improcedente.

Ahora bien, la jurisprudencia ha interpretado que para que un joven universitario mayor de edad sea acreedor de una pensión alimentaria es requisito demostrar aptitud para los estudios a la par de aprovechamiento académico. Como expusimos en el derecho precedente, la situación particular que representan los estudios postgraduados, como maestrías o doctorados, y el estudio de aquellas profesiones que requieren en exceso de los cuatro (4) años de bachillerato **amerita una consideración especial y separada que, como regla general, tendrá que ser resuelta de acuerdo a los hechos particulares de cada caso**. (Énfasis suplido). *Key Nieves v. Oyola Nieves, supra*, a las págs. 266-267. Conforme surge del expediente, los procedimientos ante el TPI no han culminado. Tanto así que, el foro primario le ordenó al señor Mojica Rodríguez culminar con el descubrimiento de prueba, previo a la resolución de la controversia.

Según hemos reseñado, el estudio de aquellas profesiones que requieren un exceso de cuatro (4) años de bachillerato, como la ingeniería, requieren una consideración especial. Por tanto, previo a realizar una adjudicación en sus méritos, el foro primario debe considerar la totalidad de las circunstancias, lo cual amerita que las partes concluyan el descubrimiento de prueba. Ante este cuadro fáctico, no intervendremos con la solicitud de relevo de pensión alimentaria en esta etapa de los procedimientos.

**IV.**

Por los fundamentos que anteceden, se expide el auto de *certiorari* solicitado y se *Confirman* los dictámenes recurridos.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones